UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

ANDRES AVILA PADILLA,

                Defendant.

------------------------------------X

S1 08 Cr. 1008-02 (RWS)

SENTENCING OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
1 27 12

**Sweet, D.J.**

      On September 29, 2011, Andres Avila Padilla ("Padilla" or "Defendant") pleaded guilty one count of conspiracy to import heroin into the United States, in violation of 21 U.S.C. §§ 960(b)(1)(A) & 963, and one count of conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(b)(1)(A) & 846.  For the reasons set forth below, Padilla will be sentenced to time served.  Padilla will forfeit to the United States all property involved in the offense or traceable to it.  He will also be required to pay a special assessment of $200.

1

## Prior Proceedings

On October 28, 2008, Indictment S1 08 CR 1008 (RWS) was filed in the Southern District of New York.  Count One charges that from May 2007 through August 2007, in the Southern District of New York and elsewhere, Padilla, a/k/a "El Negro," and others known and unknown, conspired, in 21 U.S.C. § 963, to import into the United States from a place outside thereof, one kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 952(a), 960(a)(1) and 960(b)(1)(A).

Count Two charges that from May 2007 through August 2007, in the Southern District of New York and elsewhere, Padilla and others known and unknown, conspired, in violation of 21 U.S.C. § 846, to distribute and possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A).

On September 21, 2011, Padilla appeared before the Honorable Frank Maas and allocated to Counts One and Two.  In accordance with a plea agreement, the parties stipulated to the following:

Offense Level

- Pursuant to §2D1.1(c)(2) and §3D1.3(b), the defendant's base offense level is 36 because the offense involved at least 10 kilograms but less than 30 kilograms of heroin.

- Because the defendant satisfies the criteria set forth in § 5C1.2, a two-level reduction is warranted pursuant to § 2D1.1(b)(11).

- Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, and does in fact plead guilty to the Indictments, an additional 1-level reduction is warranted, pursuant to § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

3

- In accordance with the foregoing, the applicable Guidelines offense level is 31.

Criminal History Category

- Based upon the information now available to the U.S. Attorney's Office (including representations by the defense), the defendant has no criminal convictions that result in criminal history points and is, therefore, in Criminal History Category is I.

Sentencing Range

- Title 21 USC 960(b)(1) requires a statutory minimum term of imprisonment of 120 months. Accordingly, absent relief from the statutory minimum sentence, the defendant's sentence would be at least 120 months' imprisonment. On the basis of the information available to the U.S. Attorney's Office, however, the defendant appears to satisfy the conditions set forth in 18 USC 3553(f) for relief from the statutory minimum sentence provision. Accordingly, absent new information, the Government will take the position at sentencing that the statutory mandatory minimum sentence does not apply, and that the applicable advisory Guideline range 108 to 135 months'

4

imprisonment (hereinafter "the Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to § 5E1.2. At Guidelines level 31, the applicable fine range is $15,000 to $10,000,000.

On December 9, 2010, co-conspirator Consuelo Garcia Rivera ("Rivera") appeared before the Honorable Michael H. Dolinger in the Southern District of New York and allocuted to Count 1 of Superseding Indictment S3 08 CR 1008(RWS). On April 5, 2011, Rivera was sentenced to time served followed by 3 years' supervised release and $100 special assessment.

On September 29, 2011, co-conspirator Henry Parra Cifuentes ("Cifuentes") appeared before the Honorable Kevin N. Fox in the Southern District of New York and allocuted to Counts 1 and 2 of Superseding Indictment S2 08 CR 1008(RWS) in accordance with a plea agreement. On January 26, 2012, Cifuentes was sentenced to time served and a $200 special assessment.

Padilla's sentencing is currently scheduled for February 2, 2012.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines.   Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

> > (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
>
> (5)   any pertinent policy statement . . . [issued by the Sentencing Commission];
>
> (6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).   A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not.   See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Padilla's personal and family history.

**The Offense Conduct**

The following description draws from the PSR.   The

7

specific facts of the underlying conduct are adopted as set forth in that report.

The investigation conducted by the Federal Bureau of Investigation ("FBI") revealed that the criminal conspiracy involved the shipment of heroin, via human couriers, from Colombia to the New York city area.  Traveling by commercial airliners, couriers would transport suitcases in which heroin was secreted from Colombia to the U.S.  Rivera's role in the conspiracy consisted primarily of watching over the couriers while they waited at Rivera's house for the suitcase of drugs to arrive.  Among other things, Rivera would cook for the couriers and then drive them to the airport.  Rivera would also occasionally watch the couriers to ensure that they got on the plane without incident and then would report back to the other members of the conspiracy that the courier had left.

On May 13, 2009, Rivera, a/k/a La Mona, was arrested by members of the Colombian National police ("CNP"), pursuant to a provisional arrest warrant issued by the Southern District of New York ("SDNY"), and was transported to the Direccion De Investigacion Criminal Dijin (Directorate of Criminal Investigation), Avenida EI Dorado, Numero 75-25, Bogota,

Colombia. Prior to beginning the interview, Rivera was advised of the identity of the interviewing agents and the nature of the charges, as well as her Miranda warnings, which she waived, as shown on the executed FBI form FD-395.15 (Spanish).   Also present during the interview was a special agent ("SA") with Drug Enforcement Administration (DEA), Bogota, Colombia.   Rivera provided the following information:

Rivera advised that she had a friend named Anita LNU who introduced Rivera to her (Anita's) boyfriend, Hernan LNU. Rivera further advised that Hernan had a male friend who was traveling to New York who needed a place to stay while in Colombia.   Hernan subsequently paid Rivera one hundred thousand (100,000) pesos[1] for the male to stay at her residence.   Rivera indicated that the male's name may have been Steven and that he was of Colombian descent.   Rivera further indicated that Steven stayed overnight at her residence.

The following morning, Hernan called Rivera to ask if Steven had been picked up from her residence.   Rivera advised Hernan that Steven was still at her residence.   As a result,

---

[1]      100,000 pesos is the equivalent of $50.00 in United States currency.

Hernan proceeded to send Padilla to pick Steven up.  Padilla then drove Steven to El Dorado International Airport.

After Padilla picked up Steven and left for the airport, Rivera noticed that Steven had forgotten his cellular telephone at her residence.  Rivera indicated that Hernan directed Padilla to return and pick up Rivera and the cellular telephone at her residence, which Padilla proceeded to do.  Once at the airport, Rivera advised that she was dropped off by Padilla, and that Rivera entered the terminal to look for Steven.  While inside the airport, Rivera indicated that she was detained and identified by personnel from the Colombian National Police (CNP), and that Steven had been arrested and was in custody.

Rivera advised that she was told by personnel from the CNP that Steven had been arrested for transporting drugs. Rivera denied knowing that there were drugs contained within the bag that Steven was transporting.

Rivera indicated that prior to Steven staying at her residence, Jose Luis (Cifuentes) had an uncle stay with her. Rivera further indicated that the individual was picked up and

10

that she also traveled to the airport on this occasion. Rivera did not recall who picked up this individual.   Rivera advised that on one other occasion, a homosexual male, whose name she did not recall, was brought to her residence, along with a bag by Hernan. Rivera further advised that the unknown male was picked up at her residence and transported to the airport with a bag, and that she also traveled to the airport.   Once at the airport, Rivera indicated that she entered the terminal to observe the unknown male check in and depart.   When questioned as to her purpose, in traveling to the airport, Rivera answered that she was simply accompanying the unknown male to the airport because she had become friendly with him and was taking a ride.

## The Relevant Statutory Provisions

For Count One, pursuant to 21 U.S.C. § 960(b)(1)(A), the maximum term of imprisonment is life and the mandatory minimum term is 10 years.   Pursuant to 21 U.S.C. § 841(b)(1)(A) & 846, Count Two carries a maximum term of life imprisonment and a mandatory term of 10 years' imprisonment.   Pursuant to the provisions of 18 U.S.C. 3553(f), the Defendant appears to meet the criteria set for imposition of a sentence in accordance with the applicable Guidelines, without regard to any statutory

minimum sentence.

For Count One, if a sentence of imprisonment is imposed, a term of at least 5 years' supervised release is required, pursuant to 21 U.S.C. § 960(b)(1)(A).  For Count Two, if a sentence of imprisonment is imposed, a term of at least 5 years' supervised release is required, pursuant to 21 U.S.C. § 841(b)(1)(A).  Multiple terms of supervised release are to run concurrently with each other, pursuant to 18 U.S.C. § 3624(e).

For Counts One and Two, the Defendant is not eligible for probation because the instant offense is on for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2), 21 U.S.C. §§ 960(b)(1)(A) & 841(b)(1)(A).

For both Counts, the maximum fine is $4,000,000 per count, for a total of $8,000,000, pursuant to 21 U.S.C. §§ 960(b)(1)(A) & 841(b)(1)(A).  A special assessment of $100 per count is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to 18 U.S.C. § 91963(a)(1), (a)(2), & (a)(3), as a result of committing the offenses alleged, Defendant shall

forfeit to the United States all property, real and personal, involved in the offense or traceable to such property.

**The Guidelines**

The November 1, 2011 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Counts 1 and 2 are grouped together pursuant to § 3D1.2(d), as the offense level is determined largely on that basis of the quantity of the substance involved.

The Guideline for a violation of 21 U.S.C. 963 is found in §2D1.1. As stipulated in the plea agreement, the defendant's criminal activity involved a conspiracy to import and distribute between 10 and 30 kilograms of heroin. The offense level specified in the Drug Quantity Table under § 2D1.1(c)(2), sets a base offense level of 36.

13

The Defendant appears to meet the criteria set forth in subdivisions (1)-(5) of § 5C1.2.  Accordingly, a two-level decrease in the offense level is warranted, pursuant to § 2D1.1(b)(16).

Based on his plea allocution, Defendant has shown recognition of his responsibility for the offense.  Pursuant to § 3E1.1(a), the offense is reduced two levels.  Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Accordingly, the applicable offense level is 31.

According to the FBI and the New York State Division of Criminal Justice Services, Bureau of Identification, the Defendant has no prior criminal convictions. Because Padilla has no known criminal convictions, Defendant has zero criminal history points.  A total of zero criminal history points establishes a Criminal History Category of I, pursuant to the table at Chapter 5, Part A, of the Guidelines.

14

Based on a total offense level of 31 and a Criminal History Category of I, the Guidelines range for imprisonment is 108 to 135 months.

The Guidelines range for a term of supervised release is five years, the minimum required by statute, pursuant to Section 5D1.2(c).  Application note number 2 of § 5D1.1 provides that a defendant who qualifies under § 5C1.2 is not subject to any statutory minimum sentence of supervised release.  The Guideline range for a term of supervised release is therefore two to five years, pursuant to § 5D1.2(a)(1).  The Court shall order a term of supervised release when required by statute (§ 5D1.1(a)(1)), or except for a deportable alien who is likely to be deported after imprisonment, when a term of imprisonment of more than one year is imposed (§ 5D1.1(a)(2)).  Pursuant to § 5D1.1(c), the Court should not ordinarily impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who is likely to be deported after serving a term of imprisonment. In any other case, the Court may order a term of supervised release, pursuant to § 5D1.1(b).

15

Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2).

The fine range for the instant offenses is from $15,000 to $8,000,000, pursuant to § 5E1.2(c)(3)(A) & (c)(4). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,357.01 to be used for imprisonment, a monthly cost of $328.20 for supervision, and a monthly cost of $2,153.22 for community confinement.

Pursuant to § 5E1.4, forfeiture is to be imposed upon a convicted defendant as provided by statute.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not

16

greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.   In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a downward departure from the Guidelines sentence is warranted in the instant case.

Under 18 U.S.C. § 3553(a), the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant" as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant."

From the PSR, it appears that Padilla played a minor role in the conspiracy.  According to the PSR, Padilla's role in the conspiracy was to transport drug couriers to the airport.

17

The Defendant has no known criminal history.  He is the father of four and appears from the PSR to provide for them financially.  Additionally, Padilla is 44 years old and, as such, statistically less likely to reoffend after serving the sentence imposed for the instant offenses.

Under 18 U.S.C. § 3553(a)(6), the Court further considers "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Defendants Rivera and Cifuentes, who likewise appeared to play minor roles in the conspiracy and were in Criminal History Category I, were both sentenced to time served, terms representing downward departures.  It is the Government's position that the three co-defendants are equally culpable for the instant offenses.

The Court notes that Padilla has accepted responsibility for his conduct.  In light of the nature and circumstances of the offense and history and characteristics of the Defendant as well as the need to avoid unwarranted sentence disparities among defendants, the Court finds that a downward departure from the Guideline sentence is appropriate to impose a sentence "sufficient, but not greater than necessary" under 18

U.S.C. § 3553(a).


**The Sentence**


For the instant offenses, Padilla will be sentenced to time served.


In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that Defendant is able to pay a fine, and so the fine in this case shall be waived.   A special assessment of $200, payable to the United States, is mandatory and shall be due immediately.


Defendant shall forfeit to the United States all property constituting or derived from any proceeds the Defendant obtained directly or indirectly as a result of the said violations and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in Counts One and Two.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for February 2, 2012.

It is so ordered.

New York, NY
January 27 , 2012

ROBERT W. SWEET
U.S.D.J.